**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **(1) SECURITIES AND EXCHANGE COMMISSION,** | |
| **Plaintiff,** | Cause No. 11-CV-641-CVE-TLW |
| **v.** | |
| **(2) THOMAS L. KIVISTO,** | |
| **Defendant.** | |

## COMPLAINT

The Securities and Exchange Commission files this Complaint against Defendant Thomas L. Kivisto. The Commission alleges:

## INTRODUCTION

1. This case involves material misrepresentations and omissions made in reports filed with the Commission by SemGroup Energy Partners, L.P. ("SGLP"), which Kivisto signed as a director of SGLP's general partner. The misleading statements appeared in two registration statements on Commission Form S-1, and an annual report on Commission Form 10-K, filed by SGLP with the Commission in 2007 and 2008.

2. Kivisto was also CEO and president of SemGroup, L.P. ("SemGroup"), which provided up to 89% of SGLP's revenues, and was critical to SGLP's profitability. In general, SGLP's filings claimed that it had "stable and predictable revenues" as the result of services agreements with SemGroup. SGLP was thus protected from commodity price risk and earned cash sufficient to meet long and short term needs and make quarterly distributions to unit

holders.  When Kivisto signed the filings, he managed the energy trading at SemGroup.  As Kivisto should have known, the filings misrepresented the stability and predictability of SGLP's revenues, because the energy trading program at SemGroup was increasingly taxing its credit facilities and other liquidity sources, thus jeopardizing its ability to make good on its revenue commitments to SGLP.  Ultimately, SemGroup was unable to finance its energy trading and filed bankruptcy.  SGLP's announcement in July 2008 that SemGroup's liquidity was at risk caused the price of SGLP's units to drop in trading on the NASDAQ.

3.      The filings were used by Kivisto to obtain money and property—specifically, the proceeds that SGLP obtained from its initial public offering of common units in about June-July 2007 and a secondary units offering in February 2008, and the award of units that Kivisto obtained pursuant to its long-term incentive plan.  By this conduct, Defendant, in the offer and sale of securities, violated Section 17(a)(2) and (3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)(2) and (3)].

4.      The Commission, in the interest of protecting the public from further such violations and harm, brings this action seeking permanent injunctive relief, a civil money penalty, and disgorgement by Kivisto by way of forfeiture of any claim to 150,000 SGLP units awarded to him pursuant to its long term incentive plan (with a present value of about $1.2 million).

## JURISDICTION AND VENUE

5.      The common units of SGLP are "securities" under Section 2(a)(1) of the Securities Act [15 U.S.C. § 77b(a)(1)].

6.      The Commission brings this action under Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)].

7.      Defendant, directly or indirectly, made use of the means or instruments of transportation and communication, and the means or instrumentalities of interstate commerce, or of the mails, in connection with the transactions, acts, practices, and courses of business alleged herein.  Certain of the transactions, acts, practices, and courses of business alleged herein took place in the Northern District of Oklahoma.

## DEFENDANTS

8.      **Thomas L. Kivisto ("Kivisto)**, is a resident of Tulsa, Oklahoma.  He was a director of SGLP and CEO and president of SemGroup at all times relevant to this Complaint.

## RELEVANT ENTITIES

9.      **SemGroup, L.P.,** a Delaware partnership headquartered in Tulsa, Oklahoma, bought, transported and sold petroleum products. The company grew rapidly from its founding in 2000 by Kivisto and others, making more than 64 acquisitions at an aggregate purchase price of approximately $1.1 billion and spending approximately $732 million on capital expansion projects.  SemGroup held a 38% controlling interest in SGLP and operated its assets, since SGLP had no employees, and the companies shared offices and officers.  SemGroup filed bankruptcy in July 2008.

10.      **SemGroup Energy Partners, L.P.** [now known as Blueknight Energy Partners,

L.P. ("Blueknight")]), a Delaware partnership also headquartered in Tulsa, owned various pipelines, storage tanks and terminals purchased from or "dropped down" by SemGroup, and earned fees from their operation.  Between 2007 and the first quarter of 2008, between 62% and 89% of SGLP's total revenues came from agreements with SemGroup.  SGLP conducted its initial public offering ("IPO") in June and July 2007, raising $316.2 million through an offering of 14.3 million common units representing limited partner interests.  The offering was conducted pursuant to a Form S-1 registration statement filed with the Commission June 29, 2007.  SGLP also registered an offering of 1.25 million common units for distribution pursuant to a long term incentive plan under a Form S-8 filed with the Commission on July 20, 2007.  Kivisto was awarded a total of 150,000 units under the Form S-8 registration statement.  SGLP registered a second public offering of 6.9 million common units, and raised $158.6 million, under an S-1 registration statement filed with the Commission on February 12, 2008.  It filed its annual report on Form 10-K with the Commission on March 6, 2008.  This Form 10-K was subsequently incorporated by reference into the ongoing offering under the July 20, 2007 Form S-8.

## THE STATEMENT OF FACTS

11.	SGLP purported to disclose the nature, risks and benefits of its relationship with SemGroup in substantially identical disclosures made in each SEC filing between its IPO and SemGroup's bankruptcy.  The disclosures reflected that SemGroup accounted for 83% of SGLP's *pro forma* 2006 revenues, 62% of its 2007 revenues, and 89% of its revenues for the first quarter of 2008.  SGLP earned these revenues primarily from two services agreements with SemGroup: a Throughput Agreement (for handling crude oil) reached simultaneously with the IPO, and a Terminalling Agreement (for handling liquid asphalt) reached as part of the February 2008 secondary offering.  These agreements set guaranteed minimum monthly payments, totaling

$135 million annually.  The revenues were critical to SGLP's ability to make cash distributions to unit holders, a key feature of the units.

12.    SGLP's disclosures about its relationship with SemGroup were positive in tone. For instance, SGLP repeatedly highlighted its agreements with SemGroup as "competitive strengths" that provided "stable and predictable" revenues, which SemGroup was obliged to pay regardless of whether it used SGLP's services.  SGLP further stressed that its relationship with SemGroup would supply significant business and growth opportunities that would not otherwise be available due to the "element of commodity price risk inherent" in the energy industry, which SemGroup could be counted on to manage.  SGLP expressly represented that its "operations have minimal direct exposure to changes in crude oil and liquid asphalt prices."

13.    SGLP's risk disclosures acknowledged risks resulting from its dependence upon its parent, including that its financial results and distributions to unit holders would materially suffer if SemGroup failed to successfully manage its credit and commodity price risk.  But SGLP also disclosed to investors that:

> Our Parent's assets and operations are configured to provide a counter-cyclical and counter-seasonal balance between its asset-based and [trading] activities.

SGLP also represented that:

> Cash flow from operations and our credit facility are our primary sources of liquidity....**We believe that cash generated from these sources will continue to be sufficient to meet our short-term working capital requirements, long-term capital expenditure requirements and quarterly cash distributions…. (emphasis added).**

14.    Kivisto should have known that SemGroup was not successfully managing commodity price risk and the "balance between its asset-based and [trading] activities," and that SemGroup's trading, which he created and implemented, exposed SemGroup to liquidity risk

Complaint                                                                                           Page 5 of 9
*SEC v. Thomas L Kivisto*

that jeopardized SGLP's business.  He also should have realized that more complete disclosure of these risks would be material to SGLP investors.  Kivisto nonetheless signed SGLP filings that failed to adequately disclose these risks to investors.

15.    SemGroup's trading strategy, as created and implemented by Kivisto, was historically profitable but had begun accruing unrealized mark-to-market losses by the time of SGLP's IPO.  This was a reasonably foreseeable result of the increase in crude oil prices, and in crude oil price volatility, that started in the spring of 2007 and grew progressively more pronounced over the next 18 months.  To illustrate, crude oil began trading in 2006 at $63 per barrel and ended at $60, with relatively narrow fluctuations throughout the year (between $56 and $77).  SemGroup's trading strategy in this environment was profitable.

16.    In contrast, 2007 prices began at $60 and ended at $95, with much greater fluctuation (ranging between $51 and $99).  That trend continued in 2008, with oil prices beginning at $99 and closing at $145 on July 14, 2008.  SemGroup's trading strategy, as created and implemented by Kivisto, could not accommodate the increasing prices and volatility.  Hence, by September 2007, SemGroup was incurring unrealized mark-to-market losses on a monthly basis, resulting in a net mark-to-market loss of $605 million for the year ended December 31, 2007, and a net mark-to-market loss of $944 million for the five months ended May 31, 2008.  Similarly, between June 30 and December 31, 2007, SemGroup's net derivative liabilities increased 113%, from $873 million to $1.9 billion, and further increased to $2.9 billion by the end of May 2008.

17.    Increasing unrealized losses related to derivative instruments negatively affected SemGroup's liquidity and required it to post greater margin deposits.  Between June 30, 2007 and year-end 2007, SemGroup's margin deposits increased 117%, from $784 million to $1.7 billion.

SemGroup funded the margin increases through additional borrowings against its credit facility and through trading premiums.

18.     On July 9, 2008, when it had as little as $50 million available under its credit facility, SemGroup advised its lenders that it might need as much as $150 million by the next week.  The next day, SemGroup provided the lenders with a "best guess" projection showing that it could have a negative cash balance of $71 million the next day.  The lenders immediately froze the facility and refused to issue additional letters of credit against SemGroup's available credit balance.

19.     In negotiations beginning on or about July 10, Kivisto arranged to novate SemGroup's NYMEX trading book to Barclays Bank.  The novation caused SemGroup to realize $2.7 billion in mark-to-market losses.  After the novation, SemGroup's lenders declared SemGroup in default and formally terminated the credit facility.  On July 17, before any public disclosure of SemGroup's liquidity crisis, SGLP's unit price fell 50% to $11.00 per unit from the closing price of $22.80 on July 16, and trading volume went from 125,500 units on July 16, to 5,740,800 units on July 17.

20.     After the market closed on July 17, SGLP made the first public announcement that SemGroup was "experiencing liquidity issues and is exploring various alternatives, including raising additional equity, debt capital or the filing of a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code."  On July 18, the day after the liquidity announcement, SGLP units closed at $8.30.  SemGroup filed for bankruptcy protection on July 22.

## CLAIM

### Misrepresentations in the Offer of Securities in
### Violation of Section 17(a)(2) and (3) of the Securities Act

1.      Plaintiff Commission repeats and incorporates paragraphs 1 through 20 of this Complaint by reference as if set forth *verbatim*.

2.      Defendant, directly or indirectly, singly or in concert with others, in the offer or sale of securities, by use of the means and instrumentalities of interstate commerce and by use of the mails, has obtained money or property by means of untrue statements of a material fact and omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and, engaged in transactions, practices, and courses of business which operate or would operate as a fraud and deceit upon the purchasers.

3.      Defendant, directly and indirectly, prepared, disseminated, or used contracts, written offering documents, promotional materials, investor and other correspondence, and oral presentations, which contained untrue statements of material facts and misrepresentations of material facts, and which omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

4.      With respect to violations of Sections 17(a)(2) and (3) of the Securities Act, Defendant was negligent in his actions regarding the representations and omissions alleged herein.

5.      By reason of the foregoing, Defendant has violated and, unless enjoined, will continue to violate Section 17(a)(2) and (3) of the Securities Act [15 U.S.C. § 77q(a)(2) and (3)].

## RELIEF REQUESTED

**THEREFORE**, Plaintiff respectfully requests that this Court:

### I.

Permanently enjoin Defendant from violating Section 17(a)(2) and (3) of the Securities Act [15 U.S.C. § 77q(a)].

### II.

Order Defendant to pay a civil monetary penalty in the amount of $225,000 pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] for the violations alleged herein.

### III.

Order Defendant to disgorge any claims to 150,000 units of SGLP awarded him pursuant to the long term incentive plan.

### VI.

Order such further relief as this Court may deem just and proper.

Dated: October 18, 2011.

Respectfully submitted,

*/s/ Jeffrey A. Cohen*
JEFFREY A. COHEN
Florida Bar No. 606601
ROBERT C. HANNAN
Texas Bar No. 08924700

U.S. Securities and Exchange Commission
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, Texas 76102
Telephone: (817) 978-6480 (jc)
Fax: (817) 978-4927
cohenja@sec.gov
hannanr@sec.gov